IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

|  |  |  |
|---|---|---|
| DARNELL CARTER, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.  1:07-cv-01373-BLW |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| WILLIAM MCGUINNESS, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Pending before this Court is Defendants' Motion for Summary Judgment (Docket No.

23).  Having reviewed the motion and relevant portions of the record, the Court concludes that

oral argument is unnecessary to resolve the motion.  Accordingly, the Court enters the following

Report and Recommendation.

## REPORT

### I.
### Background

Plaintiff Darnell Carter ("Plaintiff") brings this complaint pursuant to 42 U.S.C. § 1983,

alleging that Defendants acted with deliberate indifference to his medical needs in violation of

his Eighth Amendment right to be free from cruel and unusual punishment while he was

incarcerated at California State Prison Corcoran ("Corcoran"). The Defendants include Dr.

William J. McGuinness, the Chief Medical Officer ("CMO") at Corcoran, Dr. David G. Smith, a

medical doctor at Corcoran, and Naomi Loadholt, N.P, a nurse practitioner at Corcoran.

Plaintiff's Complaint alleges that he injured his right knee while playing basketball which resulted in an anterior cruciate ligament tear and medial meniscus tear. He claims he was deprived of medical attention and surgery for over eight months and only given pain medication which did not help. He asserts that the Defendants were fully aware of his problems but acted in an unprofessional manner in caring for his injury. Additionally, he stated that although he undergone arthroscopy on his knee, he still suffers from torn ligaments, pain, inflammatory fluids and a meniscus tear.

On January 5, 2009, Defendants McGuinness, Smith and Loadholt filed a motion for summary judgment (Docket No. 23). Plaintiff did not file an objection or any response to this motion.

## II.
## Discussion

A.       **Summary Judgment Standard**

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id*. at 327. "[T]he mere existence of some alleged factual dispute between the parties

will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986).  Material facts are those which may affect the outcome of the case.  *See id*. at 248.

The evidence must be viewed in the light most favorable to the non-moving party, *id.* at 255, and the Court must not make credibility findings.  *Id.*  Direct testimony of the non-movant must be believed, however implausible.  *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999).  On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence.  *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).  In addition, the Court must be "guided by the substantive evidentiary standards that apply to the case." *Liberty Lobby*, 477 U.S. at 255.

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).  To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case.  *Fairbank v. Wunderman Cato Johnson,* 212 F.3d 528, 532 (9th Cir. 2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor.  *Id.* at 256-57.  The non-moving party must go beyond the pleadings and show by "affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine issue of material fact exists.  *Celotex,* 477 U.S. at 324.

**B.      Undisputed Material Facts**

On July 19, 2006, Plaintiff injured his right knee while playing basketball.  He was seen in the emergency room at Corcoran and reported feeling a pop in his knee, pain, swelling and decreased range of motion.  X-rays taken of the right knee showed no dislocation or fracture and minimal osteoarthritis.  Plaintiff was prescribed crutches and pain medication.

On July 24, 2006, Nurse Loadholt saw Plaintiff for a follow-up examination.  She noted his right knee was tender and he was unable to flex the joint.  She recommended a "lay in", a sort of bed rest, for one month, crutches and made an urgent referral for an MRI of the knee. An MRI was taken on July 26, 2006.  It showed an anterior cruciate ligament tear and medial meniscus tear.

Plaintiff was again seen by Nurse Loadholt on August 9, 2006 for right knee tenderness.  She recommended a low bunk, elastic knee brace, and Motrin.  She also made an urgent referral for orthopedic consultation.

Plaintiff was scheduled for orthopedic consultation on August 16, 2006 but, due to time constraints, had to be rescheduled for August 23, 2006.  On that date, Plaintiff was seen by Dr. Smith for an orthopedic consultation.  His findings were consistent with the MRI.  Dr. Smith recommended arthroscopy of the right knee and also use of a cane pending surgery.  Dr. Smith did not believe that Plaintiff's knee required surgery immediately.  Nurse Loadholt made a referral for right knee arthroscopy per Dr. Smith's recommendations on August 24, 2006.

On August 30, 2006, Plaintiff was seen by Nurse Loadholt for his right knee injury.  She noted there was no edema but positive tenderness.  She again made a referral for arthroscopy.

The following day, Nurse Loadholt made a chrono recommendation for Plaintiff to be

issued a cane for 8 months.  In addition, she recommended that a work restriction of no bending at the knee.

Nurse Loadholt saw Plaintiff again on September 14, 2006, for follow up after orthopedic evaluation.  She noted he was using a cane and noted tenderness on the lateral side of his right knee.  She recommended Motrin and Vicodin and again made a referral for arthroscopy.

On September 28, 2006, Plaintiff was seen by Nurse Loadholt for asthma and routine blood pressure screening.  He reported that the Vicodin made him jittery and he did not want to take it.  He was seen again on November 9, 2006 for asthma-related complaints.

On December 14, 2006, plaintiff saw Nurse Loadholt for right knee pain.  She noted the knee was tender, but there was no swelling.  She recommended Tylenol with codeine.  She also made an urgent referral for right knee arthroscopy.

Plaintiff was seen by Nurse Loadholt on January 11, 2007 when she recommended a prescription of Darvocet for knee pain and she again made a referral for arthroscopy.  On January 16, 2007, she recommended that Tylenol with codeine be discontinued because Plaintiff reported he did not like the medication.  She again recommended Darvocet.  On January 18, 2007 when Plaintiff saw Nurse Loadholt, he reported popping and clicking in his knee and had a limited range of motion.  She recommended a knee brace.  On February 8, 2007, Plaintiff reported he did not want to take Darvocet.

Dr. McGuinness was involved in Plaintiff's case through his approval of Nurse Loadholt's recommendations and an administrative review of Plaintiff's appeals on March 6 and March 13, 2007.  On August 8, 2006, Dr. McGuinness approved Nurse Loadholt's recommendations for a knee brace, crutches and bottom bunk.  On August 31, 2006, he approved

her recommendation for use of a cane for 8 months and work restrictions such that plaintiff could not bend his knees.  On January 11, 2007, he approved Nurse Loadholt's recommendation for Darvocet.

With respect to Plaintiff's March 6, 2007 administrative appeal, Dr. McGuinness noted that Plaintiff was scheduled for knee surgery to occur within four weeks.  He also noted that Plaintiff was prescribed Vicodin, Darvocet and Tylenol with codeine for his pain but refused to take the medications.  With respect to the March 13, 2007 administrative appeal, Dr. McGuinness noted Plaintiff was scheduled for knee surgery on March 9, 2007 but had eaten a full breakfast and since 12 hours of fasting is required prior to surgery, the surgery was postponed.

On March 23, 2007, Dr. Smith performed a right knee interior derangement on Plaintiff. Plaintiff was discharged from the hospital on March 28, 2007.  Dr. Smith noted he did well following surgery and prescribed him Motrin, a lay in for 10 days and suture removal on April 2, 2007.

On April 4, 2007, Dr. Smith saw Plaintiff for a follow up status post arthroscopy of right knee.  Plaintiff still had an effusion.  Dr. Smith ordered a knee support and gave him an Ace bandage wrap.  Dr. Smith recommended a follow up in one month.

On April 23, 2007, Plaintiff was transferred to High Desert State Prison ("HDSP").  Drs. McGuinness and Smith and Nurse Loadholt have never worked at HDSP.  They have no control over the medical care he receives at HDSP.

C.     **Eighth Amendment Standard of Law and Discussion**

Based on the medical history detailed above,  Defendants assert that there is no evidence of deliberate indifference to Plaintiff's knee condition.  Instead, there is evidence that shows Plaintiff received constant and consistent care for his knee complaints, including x-rays, an MRI, pain medication, orthopedic referral and arthroscopy on the right knee.  They argue that the alleged delay in receiving surgery did not result in harm to Plaintiff's knee condition.  Because Plaintiff has failed to present any evidence that Defendants knew of and disregarded a serious risk to his health or safety, Defendants contend summary judgment is appropriate.

To state an Eighth Amendment claim regarding prison medical care, Plaintiff must show that prison officials' "acts or omissions [were] sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).  "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

> The Ninth Circuit has defined a "serious medical need" in the following ways: failure to treat a prisoner's condition [that] could result in further significant injury or the unnecessary and wanton infliction of pain[;] . . . [t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.

*McGuckin v. Smith,* 974 F.2d 1050, 1059-60 (9th Cir. 1992), *overruled on other grounds*, *WMX Technologies, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (quotation omitted).

Deliberate indifference exists when an official knows of and disregards a serious medical condition or when an official is "aware of facts from which the inference could be drawn that a substantial risk of harm exists," and actually draws such an inference.  *Farmer v. Brennan,* 511

U.S. 825, 837 (1994).  Deliberate indifference can be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed."  *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976) (footnotes omitted).

Mere indifference, medical malpractice, or negligence will not support a cause of action under the Eighth Amendment.  *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980).  A mere delay in treatment does not constitute a violation of the Eighth Amendment, unless the delay causes serious harm.  *Wood v. Housewright*, 900 F.2d 1332, 1335 (9th Cir. 1990).  The Ninth Circuit has clarified that if medical personnel have been "consistently responsive to [the inmate's] medical needs," and there has been no showing that the medical personnel had "subjective knowledge and conscious disregard of a substantial risk of serious injury," summary judgment is proper.  *Toguchi v. Chung*, 391 F.3d 1051, 1061 (9th Cir. 2004).

Defendant Loadholt saw Plaintiff on several occasions for his knee injury.  She recommended work restrictions, a bottom bunk, a cane, a knee brace, lay-ins, pain medications and referred him for an MRI, orthopedic consultation and arthroscopy.  There is no evidence that she was deliberately indifferent to his medical needs.  Instead, she continually provided him care and treatment.  The medical history reflects that she made many efforts to change Plaintiff's pain medication when he complained about ineffectiveness or side effects. There was no delay in Nurse Loadholt's treatment of Plaintiff.  When she was informed of delays in the authorized surgery, she followed up in an appropriate manner.  As a result, summary judgment should be granted in favor of Defendant Loadholt.

Dr. Smith saw Plaintiff August 23, 2006 for an orthopedic consultation.  He found that

Plaintiff had an ACL tear and a medial meniscus tear.  Dr. Smith recommended arthroscopy and use of a cane pending surgery.  On March 23, 2007, Dr. Smith performed Plaintiff's knee surgery.  Upon discharge from the hospital, Dr. Smith prescribed Motrin and a lay in for 10 days.  For a follow up appointment on April 4, 2007, Dr. Smith ordered a knee support and gave him an Ace bandage wrap.  There is no indication that Dr. Smith  had subjective knowledge, or consciously disregarded, an excessive risk to Plaintiff's health and safety.  There is no evidence that Dr. Smith intentionally denied or delayed Plaintiff access to medical care.  Dr. Smith examined Plaintiff and recommended surgery.  He then performed the surgery and provided follow-up care until Plaintiff was transferred to another prison facility.  Accordingly, summary judgment should be granted in favor of Defendant Smith.

Dr. McGuinness's involvement in the case was limited to the approval of Nurse Loadholt's recommendations and the administrative review of Plaintiff's appeals on March 6, 2007 and March 13, 2007.  With respect to Nurse Loadholt's recommendations, Dr. McGuinness approved her recommendations for a knee brace, crutches, bottom bunk, use of a cane, work restrictions and pain medication.  With respect to the administrative appeals, in the March 6, 2007 appeal, Dr. McGuinness noted that Plaintiff was scheduled for surgery within four weeks and had been prescribed pain medication.  In the March 13, 2007 appeal, Dr. McGuinness noted that Plaintiff was to have surgery on March 9 but had not fasted and the surgery was rescheduled for March 23, 2007.  Dr. McGuinness never refused care or treatment to Plaintiff.  There is no evidence whatsoever that he acted with deliberate indifference to Plaintiff's medical needs by intentionally interfering with Plaintiff's treatment.  Summary judgment should be entered in favor of Defendant McGuinness.

While Plaintiff's medical history reflects that his surgery was delayed, Plaintiff has not brought forward any evidence showing that delay in surgery was due to any action of these Defendants or that it was due to deliberate indifference.  Finally, there is no evidence that the delay between the time surgery was recommended and the actual date of surgery resulted in serious harm to Plaintiff.

## RECOMMENDATION

Based upon the foregoing, the Court being otherwise fully advised in the premises, the Court **hereby RECOMMENDS that** Defendants' Motion for Summary Judgment (Docket No. 23) be **GRANTED**.

Written objections to this Report and Recommendation must be filed within twenty (20) days pursuant to 28 U.S.C. § 636(b)(1).  The document should be captioned "Objections to Magistrate Judge's Report and Recommendation."  The parties are advised that as result of failing to do so, that party may waive the right to raise factual and/or legal objections to the United States Court of Appeals for the Ninth Circuit.

DATED: August 21, 2009

Honorable Mikel H. Williams
United States Magistrate Judge